This is an appeal from the circuit court of Amite county.
The record in this case shews a demurrer to the declaration, consisting of ten separate causes, and all of which were overruled by the court below, with the exception of the first, which was sustained. These ■questions are also raised by the bill of exceptions, taken at the trial.— Some of the causes of demurrer are not true in point of fact, and the others are not supported by the law applicable to the case. Every thing written of another, which holds him up to scorn and ridicule, and which is calculated to provoke to a breach of the peace, is a libel — Holt. 223; Scandalous matter is not necessary to make a libel. It is enough, if the defendant induce an ill opinion to be had of the plaintiff, or to make him contemptible and ridiculous, — Id. 224. The charge in the declaration is for returning a false inventory of a deceased person on oath. And ■although the statute may cot require the administrator to return the inventory on oath, yet such a charge is calculated to lessen a man in the estimation of his fellow citizens, and falls completely within the rule above laid down by HoJ/. We therefore think that the matter set forth in the-declaration is libelous, and the court below acted correctly in overruling the demurrer.
The first question raised by the bill of exceptions, is the admission in evidence to the jury of the 2d interrogatory of H. G. Runnels, on the ground that it is a leading interrogatory.
There is no principle better settled in the law of evidence, than that leading interrogatories are not admissible to be put to the witness. What is meant by leading interrogatories are questions which suggest ot the *404 witness the answer to be made, and not barely the words, did or did not, preceding the question. 1 Star. 123; 1 Phil. 222; 6 Bin. 490. Questions to which the answer yes, orno, would be conclusive, are objectionable; and so would any question which plainly suggested to the witness the answer which the party hoped to extract — 1 Starkie, 124. We will take a view of this interrogatory and see whether it comes within the rule above laid down.
After asking the witness whether he had seen a letter purporting to be written by Hurst, and directed to John R. Brown, at Jackson, he says, if Yea, was it or not concerning Thomas Torrance, the plaintiff? and was it not concerning his conduct as administrator of John Lowry, deceased? and whether Hurst did or did not say, that Torrance, in returning an inventory of said estate had sworn a lie ? or had prejudiced himself? Each of these questions naturally draw the answer yes, or no, and come expressly within the rule above laid down. Although the first and last questions in said interrogatory, had they stood alone, would have been legal and proper questions; yet, bUng associated with so much objectionable matter, the whole interrogatory s’nould have been rejected.
The answer to this interrogatory is still more objectionable, than the interrogatory itself, with the exception of tbs fact of having seen the letter referred to, and the term perjury being used, every response is an opinion, an impression, or faint recollection. After stating that he had seen a letter signed Richard Hurst, he thinlea it was addressed to John R. Brown, and he is impressed with a belief, that it was written in Amite county; and he is inclined to the belief that it was dated but a'short time previous to his seeing it. After stating that he does not know the hand writing of Hurst, he says, but from circumstances h« was induced to believe that it was written by Hurst, but does not state what those circumstances were which induced that belief. He is of opinion, that said letter had reference to the conduct of said Torrance as administrator of a deceased person; he feels confident that the term perjury was used, or that Torrance had forsworn himself in a case where he was administrator; but does not think from his very faint recollection of the subject that the letter expressed that he had sworn to a lie in court. If it is necessary to cite authorities to shew that these impressions, and opinions, and induce- *405 saents and faint recollections are not legal evidence, the doctrine will be found in 3 Starkie, 1736 & 7; 1 Phillips, 222; and I believe in every other treatise on the law of evidence. In order to make opinions and impressions evidence, the witness should state the facts and circumstances upon which he formed those opinions, so that the court and jury may be enabled to see whether his deductions were correct.
Admitting, therefore, that the interrogatory had been a legal one, the whole answer ought to have been rejected, with the exception of that part which states that he saw the letter, and that it contained the charge of perjury.
The 3d question raised by the bill of exceptions is, as to the rejection of a letter [from the jury,] written by John R. Brown, addressed to said defendant, informing him that an impeachment had been set on foot in the legislature, against him, [Brown] and that Torrance [the plaintiff,] was his accuser; and called on said defendant, Hurst, to give him, Brown, information, relative to the causes and circumstances which had given rise to this proceeding; and also as to the motives by which Torrance [the plaintiff] had been actuated, alledging that Hurst [the defendant] was in possession of information on this subject; and the letter containing the libel in plaintiff’s declaration mentioned, was shewn to be a reply to this letter, of Brown to Hurst.
A letter written confidentially by one to another, under an impression that its statements are well founded; if the writer was acting bona fide, with a view to the interest of himself, or the person whom he addressed, is not libelous. For if a communication which is not meant to go beyond those who are immediately interested in it, were to be made the subject of an action for damages, it would be impossible for the affairs of mankind to be properly conducted — Holt, 212, 213.
This letter, although a specimen of high seasoned bombast, and a violent outrage upon epistolary correspondence, yet asks for information on a subject in which the writer was deeply interested. Here is a letter written by a judge of probate, addressed to a man who had stood high in the estimation of the people of his county, and calling for information of this individual relative tó the matter which had given rise to this impeachment, and telling the defendant that the plaintiff [a man also high in the *406 confidence of his fellow citizens, being at that time a member of that body before whom Brown was to be tried,] was his accuser.
This letter, we think, was a part of the “res gesta,'’ and might, or might not have gone in mitigation of damages. Whether the reply to this letter was written confidentially, in good faith, and for the interest of said Brown, or whether it was conceived in the overflowings of a malignant and depraved heart, is most clearly a proper inquiry for the jury. We are therefore of opinion that the court below erred in admitting to go to thejury the 2d interrogatory of H. G. Ruhnels, and the answer thereto j and that it also erred in rejecting from the jury the letter of John R.» Brown.
The judgment of the court below must therefore be reversed, and a-venire de novo awarded.
Judge Black concurred